IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No.: 3:22-CR-00012-CAR-CHW-1 |
| AHKIL NASIR CRUMPTON, | |

### DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PROPOSED EXPERT CELL PHONE LOCATION/CELL TOWER TESTIMONY AND REQUEST FOR *DAUBERT* HEARING

Defendant, **AHKIL NASIR CRUMPTON**, hereby moves this Court in limine to exclude the proposed testimony from FBI Special Agent James "Jay" Berni, a purported expert on the issue of calculating the location of cellular telephones during calls based on analysis of historical records.

Before any such claimed expert testimony is admitted, the defendant requests that the Court hold an evidentiary hearing under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) to determine the methodology applied by the government's proffered expert; to assess the reliability of the opinion(s) to be offered; and to balance the probative value of the testimony against any unfair prejudice to the defendant. *See* Fed. R. Evid. 403.

### GOVERNMENT'S EXPERT NOTICE OF JAMES "JAY" BERNI

On March 27, 2023, the government provided, by electronical mail, counsel with a notice of its intent to introduce expert testimony at trial of Jay Berni under Rules 702, 703, and 705 of the Federal Rules of Evidence.

SA Berni, per the government's notice, is employed with the FBI's Cellular Analysis Survey Team ("CAST"). He has been employed in that role since April 2019.

The notice also summarizes SA Berni's anticipated testimony and attached his curriculum vitae. According to the government's notice, SA Berni would offer his opinion at trial not as a fact witness but as an expert witness in the area of historical cell site analysis regarding the following:

(1) How cellular technology works, including how cell site towers operate and how cellular phones connect with cell site towers;

(2) How data concerning cellular phone usage is reflected in call detail records retained by service providers;

(3) The methodology used to create his report;

(4) How the AT&T call detail records were used to create the maps contained in his report;

(5) What the mapping in his report reflects, in detail;

(6) The location of the AT&T towers that (215) 807-9708 connected to on March 19, 2021, between 12:00 AM and 1:55 AM; and

(7) The location of the AT&T towers that (215) 807-9708 connected to on July 17, 2021, between 2:46 AM and 3:41 AM.

The government also wishes to reserve the right to offer additional testimony of SA Berni, or other expert witnesses, and for the expert to amend or adjust his opinions and bases for those opinions due to information made known to the expert before or during trial. The government further states that its notice contains "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under Rule 16(b)(1)(C), and the bases and reasons for them.

# ARGUMENT

A. **General Considerations**

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert and other scientific or technical expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

When a party seeks to introduce expert testimony in accordance with Rule 702, such as the government seeks to do through Agent Berni, "a district court must serve as a gatekeeper." This gatekeeping obligation applies to all types of expert testimony. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999). In particular, the Court must assure itself that the proffered expert testimony is not only relevant under Rule 401 and Rule 402, but also that it is reliable under Rule 702. *See Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 589 (1993).

> **Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.** Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.

*Id.* (emphasis added; internal quotation omitted).

Where, as here, a party challenges the proffered expert testimony, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion...." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 & n. 2 (11th Cir. 2005) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

Importantly, in assessing the admissibility of expert testimony under Rule 702, the Court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 185 (2d Cir. 2001) (quoting *Daubert,* 509 U.S. at 597); *see id.* ("Pertinent evidence based on scientifically valid principles will satisfy those demands."). Before admitting the evidence, "the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Kumho Tire,* 526 U.S. at 152.

"The focus is not on the conclusions generated by the expert's methodology, but on the reasonableness of the expert's use of such an approach, together with his or her particular method of analyzing the data obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." *Kumho,* 526 U.S. at 1177. In *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999), the Third Circuit made clear:  "[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*"

**B.**     **The Government's Rule 16 Disclosure Is Insufficient**

The government served notice of its intent to rely on SA Berni's expert testimony by way of formal notice filed with the clerk of court. (Doc. 62)(attached herein as *Exhibit 1*) Additionally the government has provided SA Berni's "Report" and indicated they intend to offer that report into evidence at trial. (*Exhibit 2*)

The government's disclosure is insufficient because it does not include the bases of SA Berni's opinions and conclusions. As the Advisory Committee Notes provide, Rule 16's

requirement that the government supply a summary of the bases of Agent Berni's opinion necessitates further disclosure:

> [The 1993] amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rules of Evidence 703, including opinions of other experts.

Through the Rule 16(a)(1)(G) disclosure, the government has offered that SA Berni "will discuss how the AT&T call detail records were used to create the maps contained in his report." (Doc. 62 p.3)  Despite making this statement under a paragraph heading of "Statement of Opinions, Bases and Reasons" this statement does not, in fact, include the required disclosure of SA Berni's methods or bases for the conclusions he reaches.

Thus "a district court 'must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable,' and [] the court must screen out 'expert' testimony that is not sufficiently reliable or trustworthy for the factfinder to consider." *United States v. Brown,* 415 F.3d 1257, 1266 (11th Cir. 2005)  In this case the government's notice is woefully insufficient, containing only conclusions and general summaries of the information relied upon to reach those conclusions. When "[t]he government failed to provide any additional information as to "the bases and reasons" for the proposed expert opinion and "its disclosure was devoid of any mention of "tests, reports, [ ] investigations," or "any information that might be recognized as a legitimate basis" for that opinion, that is a violation of Rule 16(a)(1)(G). *United States v. Holland*, 223 F. App'x 891, 894 (11th Cir. 2007)

**C.     The Pie Shaped Wedges in SA Berni's "Report" Reveal the Flawed and Unreliable Nature of the Proposed Expert Testimony**

Consistent with the government's representations to the defense, it is understood that SA Berni intends to testify that individuals making calls on specified cellular telephones were located

within a given "pie wedge" depicted on the PowerPoint "Report" (Exh.2) at the time said calls occurred. The problem with the "pie wedges" is there inherent artificiality and their corresponding arbitrariness.

The only indication in SA Berni's "Report" (Exh.2) that informs the reader/viewer that the pie wedges are not precise comes on page 5, where in describing an example of a pie wedge image, he states " When displayed on a map, a sector illustration shows the general area of coverage as it relates to a specific geographic area." (Exh.2 p.5) The purpose of these "pie wedge" illustrations is to suggest to the jury that the cell phone in question was within that pie shaped geographic area at a specific day and time when it connected with that cell tower. However, it has been well-established that there are numerous factors which determine what cell tower a cell phone will connect to, and proximity is but one. That is, a cell phone does not always connect to the nearest tower and thus may be located outside the pie shaped area shown in these illustrations.

> [T]here are a variety of factors that determine the tower to which a cell phone will connect. *See* Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone,* 18 Rich. J.L. & Tech.. 3, at *7 (Fall 2011) (identifying factors that affect a tower's signal strength to include the technical characteristics of the tower, antennas and phone, environmental and geographical features and indoor or outdoor usage); Matthew Tart et al., *Historic cell site analysis-Overview of principles and survey methodologies,* 8 Digital Investigation 1, 186 (2012) ("In a perfectly flat world with equally spaced and identical masts, a mobile phone user would generally connect to the closest mast. In the real world, however, this is not necessarily the case."). Indeed, [the CAST Special Agent] himself testified that topography, physical obstructions and the signal strength of other towers can impact whether a cell phone connects to the tower closest to it.

*United States v. Evans*, 892 F. Supp. 2d 949, 953 (N.D. Ill. 2012).

What the government has disclosed so far demonstrates the need to carefully scrutinize SA Berni's proposed testimony, including his PowerPoint presentation, under *Daubert*, Fed.R. Crim. P. 702 and Fed. R. Evid. 403. Among other things, a hearing may well yield even more questions regarding the manner in which SA Berni came to his opinions and conclusions, and

what factored into the creation of his suspect PowerPoint presentation. All of this is fertile ground for an evidentiary hearing and further scrutiny by the Court.

### D. Request for *Daubert* Hearing

The government intends to offer SA Berni as an expert in the area of historical cell site analysis and has the burden of proving that his testimony meets the requirements set forth in Rule 702 of the Federal Rules of Evidence. The government has not met that burden. Rule 702 governs the admissibility of expert testimony. Expert testimony must concern "scientific, technical, or other specialized knowledge" that will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The witness must qualify as an expert from "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. And, the testimony only may take the form of "an opinion or otherwise" if the testimony is "based on sufficient facts or data," is produced from "reliable principles and methods," and the expert has "reliably applied the principles and methods to the facts of the case." Fed. R. of Evid. 702(b)-(d). "The sole purpose of the Court's gatekeeping function under Rule 702 is to determine the reliability of a particular expert opinion through a preliminary assessment of the methodologies underlying the opinion." *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. at 592–93. See also: Fed. R. of Evid. 702 (Advisory Committee Notes)

The Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, set forth a list of factors for trial courts to assess whether scientific reasoning or methodology is valid and properly applied to a case. *Daubert*, 509 U.S. 579, 592-593 (1993). These factors include: (1) "whether it can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) whether there is a "known or potential rate of error" and "standards controlling the techniques operations;" and (4) whether the methodology has received "general

acceptance" within the scientific community. *Id*. at 593-594. The Supreme Court, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), held "that these factors might also be applicable in assessing the reliability of nonscientific expert testimony, depending upon "the particular circumstances of the particular case at issue."' *Kumho*, 526 U.S. at 149. Further, the 11th Circuit has broken down the factors in determining the admissibility of expert testimony into three prongs which are: 1) the qualification of the expert; 2) the methodology which was used must be sufficiently reliable; and 3) the testimony must assist the trier of fact. *United States v. Blackmon*, 2020 Dist. LEXIS 218908 (M.D. Ala. Nov. 23, 2020) (citing *United States v. Gayden*, 977 F.3d 1146 (11th Cir. Oct. 9, 2020) In this case, the proposed testimony of SA Berni fails to meet the requirements of Rule 702 and *Daubert*, and 11th Circuit precedent.

A *Daubert* hearing is not a requirement of the district court if such a hearing would be "unnecessary" where the "reliability of the expert's methods [are] properly taken for granted." *Kumho*, 526 U.S. at 152. However, a trial judge also has discretion to "require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Id*. This case is one of the latter.

The government's expert notice lists broad categories of testimony it anticipates that SA Berni will testify to. Particularly, the notice states that SA Berni will "explain in detail what the mapping in his report reflects" and that he will "explain the methodology used to create the report." Using cell site data reports to explain the location of a phone is a common practice of law enforcement communities and oftentimes is admitted as being self-reliable but has also been held inadmissible when the expert cannot testify to explain the methodology and principles behind their opinions. *United States v. Nieves*, 2021 WL 1535338 (S.D. N.Y. Apr. 19, 2021). The expert testimony regarding methodology in how cell site data works and is used to create reports has also

been limited in other jurisdictions. Id. (citing *United States v. Hill*, 818 F.3d 289, 299 (7th Cir. 2016) (cautioning the Government "not to present historical cell-site evidence without clearly indicating the level of precision — or imprecision — with which that particular evidence pinpoints a person's location at a given time")); (citing *United States v. Medley*, 312 F. Supp. 3d 493, 502 (D. Md. 2018) (permitting cell-site testimony only after the witness "has fully explained during direct examination the inherent limitations of the accuracy of his location evidence")).

## CONCLUSION

For the foregoing reasons, and any others the court may find appropriate, Mr. Crumpton respectfully requests that the court grant the motion, and order that SA Berni's testimony is inadmissible, or in the alternative schedule a pretrial hearing to determine whether the government's proffered expert testimony is admissible under *Daubert* and Fed. R. Crim. P. 702 and/or whether it should be excluded under Fed. R. Evid. 403.

Respectfully submitted, this 18th day of September 2023.

/s/**Timothy R. Saviello**
Timothy R. Saviello
Ga. Bar No. 627820
Attorney for Defendant
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King Jr. Blvd.
Suite 400
Macon, GA 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: tim_saviello@fd.org

## **CERTIFICATE OF SERVICE**

I, Timothy R. Saviello, hereby certify that I electronically filed the foregoing pleading with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

Respectfully submitted,

/s/**Timothy R. Saviello**
Timothy R. Saviello
Ga. Bar No. 627820
Attorney for Defendant
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King Jr. Blvd.
Suite 400
Macon, GA 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
Email: tim_saviello@fd.org