IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **AKHIL NASIR CRUMPTON,** <br><br> *Defendant*. | **CRIMINAL ACTION NO.** <br> **3:22-cr-00012-TES-1** |

### ORDER DENYING DEFENDANT'S MOTION IN LIMINE REGARDING THE TESTIMONY OF SPECIAL AGENT JAMES BERNI

Before the Court is Defendant Akhil Crumpton's Motion in Limine [Doc. 93] to exclude the Government's testimony from FBI Special Agent James "Jay" Berni insofar as the Government intends for him to provide expert testimony regarding historical cell site analysis. [Doc. 93, p. 1]. Defendant first argues that the Government's original Notice of Intent [Doc. 62] is insufficient and second, that the method that Agent Berni employed to generate his Report [Doc. 101-2] is unreliable. [*Id.* at pp. 2, 4–7]. Defendant also requests that before Agent Berni's testimony is admitted, the Court hold an evidentiary hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [*Id.* at pp. 7–9]. For the foregoing reasons, the Court **DENIES** Defendant's Motion in Limine to exclude Agent Berni's testimony.

### A. Sufficiency of the Government's Notice of Intent

Defendant first argues that the Government's original Notice of Intent [Doc. 62] insufficiently describes the bases for Agent Berni's opinions and conclusions. [Doc. 93, pp. 4–5]. However, after Defendant submitted his motion, the Government filed an Amended Notice of Intent, spelling out in greater detail the bases and reasons for Agent Berni's opinions. *See* [Doc. 101]. In its Amended Notice, the Government describes generally the method by which Agent Berni was able to identify the approximate location of the cell phone at issue. [*Id.* at p. 3]. The Amended Notice also states that Agent Berni will provide an overview of cell networks and historical cell site analysis, as well as his methodology, before testifying. [*Id.* at p. 2]. Therefore, the Court **DENIES as moot** Defendant's Motion in Limine [Doc. 93] based on his contention that the Government's initial disclosure is insufficient.

### B. Reliability of Agent Berni's Testimony Under *Daubert*

Defendant's primary objection centers around the reliability of Agent Berni's testimony. Specifically, Defendant points to the "pie wedge[s]" depicted in Agent Berni's Report which are intended to demonstrate the general area in which a phone call was made and argues that they are "artificial[] and arbitrar[y]." [Doc. 93, p. 6]; *see, e.g.*, [Doc. 101-2]. In light of this alleged unreliability, Defendant requests a *Daubert* hearing to "to determine the methodology applied by the [G]overnment's proffered expert; to assess the reliability of the opinion(s) to be offered; and to balance the

probative value of the testimony against any unfair prejudice to the defendant." [Doc. 93, p. 1 (citing Fed. R. Evid. 403)].

### 1. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. "A qualified witness may offer expert testimony if: (a) the witness's scientific, technical or specialized knowledge is helpful to a trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness reliably applied the principles and methods to the facts of the case." *United States v. Rodriguez*, 591 F. App'x 897, 899 (11th Cir. 2015) (citing Fed. R. Evid 702). Under *Daubert,* the trial court must determine whether an expert's testimony is based on reasoning or methodology that is scientifically valid and whether that methodology can be applied to the facts at issue. *Daubert,* 509 U.S. at 592–93; *see also Kumho Tire Co.*, 526 U.S. 137, 141 (1999) (clarifying that *Daubert* applies to all expert testimony, not just scientific testimony).

However, while *Daubert* requires the Court to take on the role of gatekeeper, a trial judge should not displace the adversarial system or the role of a jury. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). In other words, while a court must "ensure that speculative, unreliable expert testimony does not reach the jury," *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002), "it is not the role of the

district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341; *Maiz*, 253 F.3d at 666. Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

### 2. Analysis

First and foremost, because district courts largely agree on the the reliability of historical cell site analysis, Defendant has to rely on scattershot quotes from cases that significantly differ from the facts in this case. Defendant admits that "[u]sing cell site data reports to explain the location of a phone is a common practice of law enforcement communities and oftentimes is admitted as being self-reliable." [Doc. 93, p. 8]. However, Defendant also argues that, nevertheless, cell site analysis "has also been held inadmissible when the expert cannot testify to explain the methodology and principles behind their opinions." [Doc. 93, p. 8 (citing *United States v. Nieves*, No. 19-cr-354 (JSR), 2021 WL 1535338 (S.D.N.Y. Apr. 19, 2021))]. Regardless of how true that may be in *those* cases, it is simply not the case here that "the expert cannot testify to explain the methodology and principles behind [his] opinion[]." *See* [Doc. 93, p. 8].

The expert here, Agent Berni, works as a Special Agent for the FBI's Cellular Analysis Survey Team (CAST), where he provides cellular record analysis to federal,

4

state, and local law enforcement agencies across the country. *See* [Doc. 102, p. 5]. He has similar experience from his time serving as a U.S. Army Signal Intelligence Officer, where he also received training in device tracking and analysis. [*Id.*]. Additionally, Agent Berni has testified as an expert witness over 60 times, including in two cases in which the district courts denied a defendant's request for a *Daubert* hearing regarding Agent Berni's anticipated testimony using cell site analysis. [Doc. 102, pp. 5–6]; *see United States v. Frazier*, 442 F. Supp. 3d 1012 (M.D. Tenn. 2020); *United States v. Blackmon*, No. 1:19-cr-230-ECM, 2020 WL 6882143, at *3 (M.D. Ala. Nov. 23, 2020).

Notwithstanding Agent Berni's experience in the field and as a testifying expert in state and federal courts, Defendant seeks to preclude his testimony at trial and the introduction of his Report as not meeting the requirements of *Daubert*. Defendant relies primarily upon a quote from *United States v. Evans* that, in short, explains that "there are a number of factors" influencing cell tower connections. 892 F. Supp. 2d 949, 956 (N.D. Ill. 2012). However, the testimony at issue in *Evans* renders the case readily distinguishable from the one at bar.

The *Evans* court was not concerned about the special agent there testifying as to the operation of cellular networks nor about how to use historical cell site data to determine the *general* location of a cell phone. *See id.* at 950, 957. Rather, "[w]hat troubled the court was that the Government wanted to take it a step further by having [the special agent] testify that calls were placed on defendant's phone from a particular

building where the victim was held for ransom based upon a 'granulization theory.'" *Frazier*, 442 F. Supp. at 1022 (distinguishing *Evans*). The agent claimed that, using this method, he could "estimate the range of certain cell sites based on a tower's location to other towers . . . allow[ing] him to predict the coverage overlap of two closely positioned towers." *Evans*, 892 F. Supp. 2d at 956. The *Evans* court was suspicious of the granulization theory's reliability—stating that "[the theory] remains wholly untested by the scientific community, while other methods of historical cell site analysis can be and have been tested by scientists"—and excluded the testimony insofar as the special agent there relied on it. *Id.*

Unlike in *Evans*, the Government quite clearly states: "Here, the Government does not intend to call Agent Berni to testify regarding the exact location of Crumpton's phone on the dates of the shootings in Watkinsville and Philadelphia. Rather, the Government will call Agent Berni to testify about how he used historical cell site data to generate a general geographic location for [Defendant's] phone." [Doc. 102, p. 8]. The Government provided similar information in Agent Berni's Summary of Experience and Methodology [Doc. 101-3], which specified twice in two pages that historical cell site analysis "provide[s] the *approximate* location—not the *exact* location—of the phone at the time the record was generated." [Doc. 101-3, pp. 1–2 (emphasis in original)]; *see also* [Doc. 102, p. 9]. "This representation makes Evans distinguishable." *Frazier*, 442 F. Supp. 3d at 1023; *see also United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 55 (D.D.C. 2013)

(explaining that the defendant's reliance on *Evans* is "seriously flawed" given that the witness intended to testify only as to the cell phone's approximate location); *United States v. Pembrook*, 119 F. Supp. 3d 577, 597 (E.D. Mich. 2015) (finding that the proposed testimony regarding the "general geographic location" of the four cell phones at issue was "not similar enough to [the testimony] excluded in *Evans* to justify that result here"); *United States v. Jones*, 918 F. Supp. 2d 1, 3 n.2 (D.D.C. 2013) ("[D]efendant's reliance on [*Evans*] is of no help, since it focused on the granulization theory.").

Unlike the granulization theory, the method that Agent Berni employs to determine the general location of cell phones is established and reliable. While our circuit has not had the occasion to address the matter, the Seventh Circuit has described the methodology as follows:

> Historical cell-site analysis uses cell phone records and cell tower locations to determine, within some range of error, a cell phone's location at a particular time. A cell phone is essentially a two-way radio that uses a cellular network to communicate. Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of A Cellular Phone*, 18 Rich. J.L. & Tech. 3, 5 (2011). Each cell tower covers a certain geographic area. That geographic area depends upon "the number of antennas operating on the cell site, the height of the antennas, topography of the surrounding land, and obstructions (both natural and manmade)." *Id.* In urban areas, cell towers may be located every one-half to one mile, while cell sites in rural areas may be three to five miles apart. *Id.* When a cell phone user makes a call, the phone generally "connect[s] to the cell site with the strongest signal," although "adjoining cell [towers] provide some overlap in coverage." *Id.* While the proximity of the user is a significant factor in determining the cell tower with which the cell phone connects, it is not the only one. *Id.* Other factors include the towers' technical aspects, including geography and topography, the angle, number, and directions of the antennas on the sites, the technical

characteristics of the relevant phone, and "environmental and geographical factors." *Id.* at 7.

*United States v. Hill*, 818 F.3d 289, 295–96 (7th Cir. 2016). Before *Hill*, "[n]o federal court of appeals ha[d] . . . said authoritatively that historical cell-site analysis is admissible to prove the location of a cell phone user," but "[d]istrict courts that have been called upon to decide whether to admit historical cell-site analysis have almost universally done so." *Hill*, 818 F.3d at 297 (7th Cir. 2016) (collecting cases). Due to the vast agreement among district courts, the Court agrees with the Seventh Circuit in *Hill* that "historical cell-site analysis can show with sufficient reliability that a phone was in a general area, especially in a well-populated one. It shows the cell sites with which the person's cell phone connected, and the science is well understood." *Hill*, 818 F.3d at 295.

Any dispute over the precision and potential range of error goes to the testimony's weight and persuasiveness, not its admissibility. *See U.S. v. Reynolds*, 626 F. App'x 610, 617 (6th Cir. 2015) ("While the assumption that a tower would not service a call made 10 or 20 miles away may be challenged . . . such a challenge speaks to the weight of the evidence, and not to its inherent reliability."); *Jones*, 918 F. Supp. 2d at 5 ("Indeed, numerous other courts have concluded that the mere existence of factors affecting cell signal strength that the expert may not have taken into account goes to the weight of the expert's testimony and is properly the subject of cross-examination, but does not render the fundamental methodology of cell site analysis unreliable."); *United States v. Hahn*, No. CR 17-00582 JMS-RLP, 2019 WL 1246185, at *3 (D. Haw. Mar. 18,

2019) (stating that the defendant's argument that the witness could "not testify as to the specific range of any particular tower in relation to specific geographic locations . . . goes to the weight, not the admissibility, of the testimony"). And that determination properly lies with a jury.

While *Daubert* requires the district court to "serve as a gatekeeper, it need not conduct a formal hearing 'where the reliability of an expert's methods is properly taken for granted.'" *United States v. Rodriguez*, 591 F. App'x 897, 899 (11th Cir. 2015) (quoting *Kumho Tire Co.*, 526 U.S. at 152). In the Court's view, the reliability of historical cell site analysis for determining the general location of a cell phone is well established, and the Government has met its burden in proving that Agent Berni's testimony meets the requirements of Rule 702. Therefore, a *Daubert* hearing is unnecessary. Accordingly, the Court **DENIES** Crumpton's Motion in Limine [Doc. 93] to exclude the testimony of Agent James Berni and his request for a *Daubert* hearing on the matter.

**SO ORDERED**, this 28th day of September, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**